THE STATE, EX REL. SMITH, APPELLANT, *v.*
INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as State, ex rel. Smith, *v.* Indus. Comm. (1986),
26 Ohio St. 3d 128.]

(No. 85-1631—Decided August 20, 1986.)

*David J. Boyd,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, *Janet E. Jackson* and *Tyrone Yates,* for appellee.

*Per Curiam.* The determination of disputed facts is a matter within the final jurisdiction of the Industrial Commission. *State, ex rel. Hudson,* v. *Indus. Comm.* (1984), 12 Ohio St. 3d 169, 170. Consequently, the well-settled standard of review is that the commission's findings will be fully upheld where its determination is supported by *some* relevant evidence. *State, ex rel. Kokocinski,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 186, 188.

The commission outlined, in its findings of fact, the evidence which it relied upon to reach its conclusions as required by *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 483-484. The basis of the finding that appellant is not permanently and totally disabled was based on the following:

"The medical reports of Drs. Wolf and Reynolds were reviewed and evaluated. The findings and order are based particularly on the medical report of Dr. Reynolds, the evidence in the file, and the evidence adduced at the hearing."

While it is difficult to accept the report of Dr. Reynolds because it was unsigned, the report of Dr. Wolf fully substantiates the findings of the commission. Such report, although not emphasized, was certainly "evidence in the file" which was also "adduced at the hearing."

Accordingly, we must uphold the commission's findings and affirm the decision of the court of appeals denying the writ.

*Judgment affirmed.*

LOCHER, HOLMES and WRIGHT, JJ., concur.

DOUGLAS, J., concurs separately in judgment with opinion.

CELEBREZZE, C.J., concurs in part and dissents in part.

SWEENEY and C. BROWN, JJ., dissent.

DOUGLAS, J., concurring. For the reasons stated, where herein pertinent, in my concurring opinion in *State, ex rel. Rouch,* v. *Eagle Tool & Machine Co.* (1986), 26 Ohio St. 3d 197, 201-217, I concur in the judgment of the court.

CELEBREZZE, C.J., concurring in part and dissenting in part. I applaud the plurality's decision to discount Dr. Reynolds' unsigned report as evidence in support of the Industrial Commission's order. The plurality properly recognizes that an unsigned medical report simply is not reliable evidence upon which the commission can base its determination as to extent of disability. See *State, ex rel. Brown,* v. *Indus. Comm.* (1983), 13 Ohio App. 3d 178, 179.

The commission based its order in the instant case "particularly on the medical report of Dr. Reynolds." Because this report cannot constitute evidence to support the commission's findings, the requested writ should have issued from this court. The plurality, however, is not to be deterred from searching for other evidence with which to evaluate the commission's order. In a truly perplexing development, the plurality seizes on the report of Dr. John Wolf, Jr. as " 'evidence in the file' which was also 'adduced at the hearing' " to substantiate the commission's findings. The plurality's use of Dr. Wolf's report *cannot* be squared with our holding in *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481, 484, where we stated that "this court will no longer search the commission's file for 'some evidence' to support an order of the commission not otherwise specified as a basis for its decision." This flouting of our past decision in *Mitchell* is symptomatic of the plurality's misapplication of its version of the "some evidence" rule. A more careful examination of this court's standard of review of Industrial Commission determinations of disability in mandamus actions would better serve the commission and those who come before it.

The touchstone of our review, and the fundamental proposition with which every member of this court has agreed, is that the extraordinary remedy of mandamus will not be used to control the commission's discretion, but may be invoked to remedy an abuse of that discretion. It is in our attempt to define "abuse of discretion" as it relates to evidentiary challenges that this court has fallen into the "some evidence" morass. This phrase today has unfortunately come to mean as much or as little as a majority of this court wishes to make of it. It is time to jettison this hollow "some evidence" jargon. Rather, the focus of our attention must be to pro-

vide meaningful consideration to allegations of unlawful administrative action. In so doing, we should not merely substitute a new phrase for an old one, for "the precise way in which courts interfere with agency findings cannot be imprisoned within any form of words," and "new formulas attempting to rephrase the old are not likely to be more helpful than the old." *Universal Camera Corp.* v. *Natl. Labor Relations Bd.* (1951), 340 U.S. 474, 489.

In determining extent of disability, the Industrial Commission is the trier of fact, as in a trial at law to the bench. The commission sees the claimant, hears the testimony from both sides and digests the medical, vocational and other evidence offered. As we stated in *State, ex rel. Coen,* v. *Indus. Comm.* (1933), 126 Ohio St. 550, 551-552, "[t]he Constitution and statutes have confided to the Industrial Commission as a tribunal in the first instance power to pass upon such evidence. * * * In performing such function, the commission should give to all the evidence before it, * * * such weight as it finds that the evidence warrants."

Our review of commission disability determinations is necessarily limited in scope. The commission's hearing officers are specialists whose expertise and first-instance opportunity to appraise evidentiary matters must be respected by this court. Further, mandamus is an extraordinary remedy to which the relator must demonstrate, *inter alia,* a clear legal right. This proposition is beyond contention, and it is equally well-settled that although this court may review the evidence upon which the commission based its order, we may not reweigh that evidence. In *State, ex rel. Coen, supra,* at 553-554, this basic tenet of extraordinary relief was explained in the context of judicial consideration of commission orders: "Mandamus cannot be granted where the effect of its issue would be to substitute the command of the superior for the judicial discretion of the inferior tribunal." In *Coen,* we concluded that the courts cannot, in a mandamus action, control the commission's discretion unless an abuse of that discretion "affirmatively appears." *Id.* at 554.

Within these parameters, this court must establish workable standards for identifying an abuse of discretion by the commission. Only in this way can we fulfill our responsibility under the Ohio Constitution. In simple and straightforward language, this court has previously defined abuse of discretion as "discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." *State, ex rel. Democratic Executive Committee,* v. *Brown* (1974), 39 Ohio St. 2d 157, 161 [68 O.O.2d 100]; *State, ex rel. Shafer,* v. *Ohio Turnpike Comm.* (1953), 159 Ohio St. 581, 591 [50 O.O. 465]; *State, ex rel. Wilms,* v. *Blake* (1945), 144 Ohio St. 619, 624 [30 O.O. 220]. See, also, *Sinclair* v. *Sinclair* (1954), 98 Ohio App. 308, 311 [57 O.O. 347]. Cf. *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 87. Conversely, the exercise of honest judgment is not an abuse of discretion. "Error of judgment does not invalidate discretion, exercised in good faith." *State, ex rel. Shafer, supra,* at 593. Thus, it is only those

rare instances where an administrative body's ruling cannot be reconciled with the facts or reason which must be remedied by the issuance of the extraordinary writ of mandamus.

Consistent with the foregoing, when this court examines whether the Industrial Commission abused its discretion, the commission's disability benefits order must meet certain minimum criteria, both procedurally and substantively.

First, the commission must state specifically the evidence relied upon and explain the reasons for its order. This is nothing more than an insistence on elementary due process, which has been eloquently reaffirmed in a recent decision of the United States Supreme Court:

"It is an axiom of administrative law that an agency's explanation of the basis for its decision must include 'a "rational connection between the facts found and the choice made." ' [Citations omitted.] Agency deference has not come so far that we will uphold regulations [or orders] whenever it is possible to 'conceive a basis' for administrative action. * * * Our recognition of Congress' [in the instant case, the General Assembly's] need to vest administrative agencies with ample power to assist in the difficult task of governing a vast and complex industrial Nation carries with it the correlative responsibility of the agency to explain the rationale and factual basis for its decision, even though we show respect for the agency's judgment in both." *Bowen* v. *American Hospital Assn.* (1986), 476 U.S. ____, 90 L. Ed. 2d 584, 597-598.

Additionally, this court, in *State, ex rel. Mitchell, supra,* at 484, explained that such specificity was necessary both to enable the parties to prepare an action in mandamus contesting the commission's disability order and to enable courts properly to review the basis of that order. In no other way can the parties' understanding of the ruling be ensured and the right to meaningful review be preserved.

Secondly, there must be a reasonable basis for the commission's order based on the record evidence. It would be unreasonable and arbitrary for the commission to select, or for this court to examine, only that evidence which supports the commission's order. Rather, we must look at that evidence in its proper, overall context. This has been an accepted method of administrative review for decades, as one commentator observed:

"* * * Obviously responsible men would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears. Evidence which may be logically substantial in isolation may be deprived of much of its character or its claim to credibility when considered with other evidence." Jaffe, Administrative Procedure Re-examined: The Benjamin Report (1943), 56 Harv. L. Rev. 704, 733.

The evidence supporting the commission's order must also be of sufficient quantity *and* quality to provide a reasonable basis for the commis-

sion's finding. Certainly, there must be more than a scintilla of evidence. Justice Paul M. Herbert put it well in stating: "I do not believe that it is consistent with the Constitution for this court to hold that the decision of an administrative agency is final in the field of facts merely because there may be some slight evidence to support such decision." *State, ex rel. Szekely,* v. *Indus. Comm.* (1968), 15 Ohio St. 2d 237, 245 [44 O.O.2d 225] (Herbert, J. dissenting). Accord *State, ex rel. Johnson,* v. *Indus. Comm.* (1983), 11 Ohio App. 3d 22, 23. Qualitatively, there must be relevant and reliable evidence that a reasonable mind could accept as adequate to support a conclusion. See, *e.g., Universal Camera Corp., supra,* at 477. In essence, in determining that there has been an abuse of discretion, the court must feel not that it would differ with the result, but that the commission could not reasonably have based its conclusion on the evidence in the record. *State, ex rel. Coen, supra,* at 553; *State, ex rel. Shafer, supra* at 593.

It is against the basic ideals of justice for this court's review of commission disability determinations to be reduced to a shorthand "some evidence" rule which is devoid of any meaningful judgment on our part. With all due respect for the commission's discretion, judicial considerations of its disability orders in mandamus actions must still be careful, considered and guided by the foregoing principles.

It is, therefore, my view that the commission does not abuse its discretion in determining the extent of a claimant's disability if: (1) it states with specificity and explains the basis of its order, (2) there is sufficient reliable and relevant evidence reasonably to support the commission's conclusion (See *State, ex rel. Johnson,* v. *Indus. Comm., supra,* at 23), and (3) the record evinces that the commission's decision is based on fact, logic and the law and that its findings are not clearly against the evidence.

The commission abuses its discretion if the reviewing court finds that there was not sufficient evidence for reasonable men to have made such findings. If its ruling is supported by a grain of proof, buried in an avalanche of confutative evidence, the commission's findings are clearly unsubstantiated and its conclusions are therefore unreasonable. The resulting order has clearly been proven wrong and an abuse of discretion is manifest.

This court abdicates its responsibility by merely seeking out a sliver of evidence to justify the commission's order, for all records will certainly contain some item supporting any commission determination. It should also be emphasized, however, that this court's belief that it would have reached an opposite result is not a proper basis upon which to issue the writ of mandamus. To find an abuse of discretion, this court must conclude that the commission could not reasonably have made its order because the decision was clearly and convincingly against the record evidence.

Mandamus is an extraordinary remedy, difficult to achieve. But the right to bring an action in mandamus is an ancient one, wisely preserved

by this state's Constitution and statutes. Its essential purpose is to restore to the relator the rights and privileges of which he has been unlawfully deprived. Those joining in today's judgment should not, through the misuse of their "some evidence" rule, attempt to dilute the effectiveness of this remedy and discourage those who seek it by transforming our extraordinary consideration of commission disability orders into a mechanical "rubber stamp" process. In the end, an agency's abuse of its discretion can only be brought back to the rule of reason and law by the exercise of meaningful judicial oversight. The plurality's perverted "some evidence" rule is no oversight at all.

CLIFFORD F. BROWN, J., dissenting. Because I believe that the report relied on by the Industrial Commission in its order cannot constitute evidence capable of supporting that order, I dissent.

The order of the commission reads:

"The medical reports of Drs. Wolf and Reynolds were reviewed and evaluated. The findings and order are based particularly on the medical report of Dr. Reynolds, the evidence in the file, and the evidence adduced at the hearing."

It is clear that the report of Dr. Reynolds was the *sole* report relied upon by the commission. The statement that the medical report of Dr. Wolf was "reviewed and evaluated" is not to be interpreted to mean that Dr. Wolf's report was relied upon by the commission. Therefore, the only report this court should evaluate is the report of Dr. Reynolds. *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc.* (1983), 6 Ohio St. 3d 481.

In my view, Dr. Reynolds' report cannot constitute evidence on which the commission may rely to support its order. I concur with the analysis of the court below in this regard. In excluding Dr. Reynolds' report from evidentiary consideration, the court of appeals resorted to its decision in *State, ex rel. Brown,* v. *Indus. Comm.* (1983), 13 Ohio App. 3d 178. There, the court stated:

"* * *[An] unsigned report cannot be proper evidence. A critical issue must not depend upon an unsigned physician's report. The potential for inaccuracy is too great to depend upon such a statement. Respondent contends that such a report has no less validity than a doctor's deposition. A deposition, however, is taken under oath upon timely notice to all parties with cross-examination permitted of the witness. See Civ. R. 30. Such protections for accuracy afforded by Civ. R. 30 are not present in the physician's medical report at issue in this case." *Id.* at 179.

I find this analysis very persuasive. I believe that for the reasons outlined by the *Brown* court, Dr. Reynolds' report, which was unsigned and unread, cannot constitute evidence that the appellant was not permanently and totally disabled.

While the plurality opinion today acknowledges that the report of Dr. Reynolds is "difficult to accept," it proceeds to evade this little

"difficulty" by stating that "the report of Dr. Wolf fully substantiates the findings of the commission. *Such report, although not emphasized, was certainly 'evidence in the file' which was also 'adduced at the hearing.'* " (Emphasis added.) Readers who are at all familiar with the case law in this area will most certainly be scratching their heads over this statement. It completely ignores one of the most significant cases to be announced by this court in recent years: *State, ex rel. Mitchell,* v. *Robbins & Myers, Inc., supra.*

In *Mitchell,* we held that "district hearing officers, as well as regional boards of review and the Industrial Commission, *must specifically state which evidence and only that evidence which has been relied upon to reach their conclusion, and a brief explanation stating why the claimant is not entitled to the benefits requested.* Moreover, this court will no longer search the commission's file for 'some evidence' to support an order of the commission *not otherwise specified as a basis for its decision."* (Emphasis added.) *Id.* at 483-484.

Today's plurality is apparently in such haste to reach its result-oriented judgment that it cannot be bothered either to analyze *Mitchell's* applicability in any meaningful way, or overrule it, which would be the only honest way to reach the result herein. There is simply no conceivable way that the order of the commission can satisfy *Mitchell* once the report of Dr. Reynolds is discounted. The *only* report specifically relied upon by the commission in its order was that of Dr. Reynolds. Once that report is discounted, as the plurality has done, this court cannot search the file for evidence "not otherwise specified as a basis for its decision." The plurality today cavalierly does exactly what *Mitchell* said we would no longer do: it *searches the file* for other evidence to support the order. Seizing on the report of Dr. Wolf, the plurality then justifies its use by emphasizing that it constitutes "evidence in the file" which was also "adduced at the hearing." But this sort of approach was precisely what *Mitchell* was designed to abolish. As we noted therein at 483, the *Mitchell* file "highlight[ed] a problem which is becoming increasingly prevalent, that is, the commission's failure to state with any precision the basis for its decisions. Claimants and employers alike, who appear before the commission, are frequently informed that requested benefits are either being granted or denied based on 'the evidence in the file and/or the evidence adduced at the hearing.' " This problem was then resolved by our holding that the commission must state with specificity which evidence and only that evidence it relied on, and must provide a brief explanation of the reason for its order.

In its rush to judgment, today's plurality completely disregards *Mitchell* in an obviously hastily devised opinion which will serve only to confuse. I might add that Justice Holmes, who joins with the plurality today, praised *Mitchell* at the time it was announced, stating that he was "in wholehearted agreement with the policy pronouncements" contained

therein. *Mitchell, supra,* at 484 (Holmes, J., concurring in part and dissenting in part). He called the opinion a "salutary one, and long overdue." *Id.* He further declared that "[w]hen writing as a judge of the Tenth District Court of Appeals, I opined for just such a rule on a number of occasions." *Id.* at 484-485. Now that "just such a rule" is firmly established in Ohio case law, Justice Holmes is strangely eager to join in its sabotage. His concurrence herein is doubly strange, given his past pontifications on the sanctity of *stare decisis.* See, *e.g., Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, 29-31 [22 O.O.3d 152] (Holmes, J., dissenting).

Based on the foregoing, I would reverse the judgment of the court of appeals and issue a writ of mandamus directing the commission to find appellant permanently and totally disabled, on the basis that there was no evidence supporting the commission's order denying such benefits, and there was substantial, reliable and probative evidence, in the form of the report of Dr. Lambert, that appellant was in fact permanently and totally disabled. Dr. Lambert's report stated that appellant's disability "certainly is permanent. He would be unable to perform any job which required standing, climbing, walking or heavy lifting." Dr. Lambert's evaluation is consistent with the rule that "determinations of disability be based on a claimant's ability to return to the type of work for which he or she is qualified." *State, ex rel. Kokocinski,* v. *Indus. Comm.* (1984), 11 Ohio St. 3d 186, 189.

For the foregoing reasons, I dissent.