THE STATE, EX REL. CASE, APPELLANT, *v.* INDUSTRIAL COMMISSION
OF OHIO, APPELLEE, ET AL.

[Cite as State, ex rel. Case, *v.* Indus. Comm. (1986), 28 Ohio St. 3d 383.]

(No. 86-667—Decided December 26, 1986.)

*Larrimer & Larrimer, Richard S. Hunter* and *Craig Aalyson,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Michael L. Squillace,* for appellee.

*Per Curiam.* Our first query is whether the court of appeals erred in holding that laches bars appellant's action in mandamus. The doctrine of laches is based upon the maxim *vigilantibus non dormientibus jura subveniunt* (the laws aid the vigilant, and not those who slumber on their rights). In our unanimous opinion in *Connin v. Bailey* (1984), 15 Ohio St. 3d 34, 35, we set forth the applicable law as follows:

" 'Laches is an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party. It signifies delay independent of limitations in statutes. It is lodged principally in equity jurisprudence.' "

In order to invoke the doctrine, the following must be established:

"Delay in asserting a right does not of itself constitute laches, and in order to successfully invoke the equitable doctrine of laches it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Smith v. Smith* (1959), 168 Ohio St. 447 [7 O.O.2d 276], paragraph three of the syllabus, approved and followed in *Connin, supra,* at 35-36. Accord *Kinney v. Mathias* (1984), 10 Ohio St. 3d 72.

The longstanding purpose of the doctrine is that a court will not aid in enforcing " ' * * * stale demands, where the party has slept upon his rights, or acquiesced for a great length of time. * * * ' " *Piatt v. Vattier* (1835), 34 U.S. 405, 416. Justice Story, who delivered the opinion of the court in *Vattier,* explained that " ' [n]othing can call forth this court into activity but conscience, good faith and reasonable diligence. Where these are wanting, the court is passive and does nothing; laches and neglect are always discountenanced; and therefore from the beginning of this jurisdiction there was always a limitation of suit in this court.'* * *" *Id.* at 416-417.

As applied to this scenario, we believe it was reasonable in 1980 for appellant to pursue the denial of workers' compensation benefits by first pursuing an action at law in the common pleas court.[2] The court below noted,

---

[2] In *State, ex rel. First Natl. Bank,* v. *Botkins* (1943), 141 Ohio St. 437 [25 O.O. 576], paragraph one of the syllabus, we held: "To entitle relator to a writ of mandamus, the record must disclose affirmatively that there is no plain and adequate remedy in the ordinary course of the law; in the absence of such showing the writ will be denied." (Followed in *State, ex rel.*

in pertinent part, that "* * * much of the intervening [*i.e.*, approximately three of the four years] time was spent litigating the jurisdictional aspects of a direct appeal from that order in common pleas court for which jurisdiction was appropriately [arguably, see fn. 2, *supra*] denied because the order was not appealable pursuant to R.C. 4123.519 * * *."

We believe that the record, far from exhibiting a negligent omission in appellant's assertion of her rights, is replete with diligent and timely assertions of her claimed rights, both administratively and judicially.

Appellant waited approximately one year to commence this extraordinary action following the expiration of her time for appeal from the common pleas court dismissal. Under the circumstances, this period simply does not constitute the unreasonable length of time necessary for appellee to successfully invoke the equitable doctrine of laches as a bar. Cf. *State, ex rel. Inland Division,* v. *Adams* (1982), 1 Ohio St. 3d 44, 45 (complaint for a writ of mandamus filed in the court of appeals sixteen months following the Industrial Commission's final order). Additionally, the remainder of the four-year delay was chiefly occasioned by the pendency of the trial court action and not by appellant's abandonment of her claim. Since we find that this original action was seasonably commenced in the court of appeals, we conclude that the court of appeals erred in rejecting the referee's recommendation that laches not bar the action.

---

*Stanley,* v. *Cook* [1946], 146 Ohio St. 348 [32 O.O. 419], paragraph three of the syllabus.) Likewise, *State, ex rel. Bassichis,* v. *Zangerle* (1933), 126 Ohio St. 118, paragraph two of the syllabus, stands for the rule of law that "[f]ailure of a relator to avail himself of his legal remedy, within the period limited by the statute providing such remedy, does not confer upon him the right to the extraordinary remedy of mandamus."

As applied to the instant case, appellant was well justified in her attempt to first seek relief in the court of common pleas by way of appeal since it was unsettled in 1980 as to whether a party to an occupational disease claim could "* * * appeal a decision of the Industrial Commission to a court of common pleas if the claim accrued before January 1, 1979.* * *" *Morgan* v. *Western Electric Co.* (1982), 69 Ohio St. 2d 278, 279 [23 O.O.3d 271]. In this regard, we find the following passage from Judge Whiteside's dissenting opinion in the appellate court below to be well-reasoned:

"Prior to 1979, there was no right of appeal pursuant to R.C. 4123.519, or otherwise, in an occupational disease case. Effective January 1, 1979, R.C. 4123.519 was amended to permit appeals in occupational disease cases. However, it was not clear whether such right of appeal was afforded with respect to a workers' compensation claim which accrued prior to that date. It was not until 1982 that the Supreme Court, resolving conflicts between courts of appeals, in a four-to-three decision held that a claimant in the position of relator has a right of appeal pursuant to R.C. 4123.519 from a decision determining the right to participate in the workers' compensation fund. *Morgan* v. *Western Electric Co.* (1982), 69 Ohio St. 2d 278 [23 O.O.3d 271]."

Neither the wisdom of this court's decision in *Morgan* nor the propriety of the instant trial court's dismissal on jurisdictional grounds need be resolved in this action. However, we certainly will not fault nor punish appellant for attempting to secure relief through a remedy at law since the burden would have been on her to demonstrate that there was no legal remedy had she attempted to invoke extraordinary relief during an unsettled time—a proposition tenuous in 1980 and rejected in 1982 by the *Morgan* court.

In *In re Petition for Mallory* (1985), 17 Ohio St. 3d 34, we stated, with all justices concurring, that "[i]n an appeal as of right from a judgment of the court of appeals involving an extraordinary writ, this court will consider the case as if the action originally had been filed here." See, also, *e.g., State, ex rel. Gatlin,* v. *Yellow Freight System, Inc.* (1985), 18 Ohio St. 3d 246, 248, at fn. 5; *State, ex rel. Halloran,* v. *Zapatony* (1984), 15 Ohio St. 3d 73, at fn. 2; *Bobb* v. *Marchant* (1984), 14 Ohio St. 3d 1, 2, at fn. 1; *State, ex rel. Taylor,* v. *Glasser* (1977), 50 Ohio St. 2d 165, 166-167 [4 O.O.3d 367]. Since we find that the court of appeals erred in disposing of the cause because of laches, we must next consider appellant's claim that the commission abused its discretion by refusing to award temporary total disability benefits in accordance with the provisions of R.C. 4123.56 during the period of time she was admittedly not working. The parties' stipulation of partial record and exhibits reveals numerous examinations and reports concerning appellant's impairment and its causal relationship to her employment at Goodyear as a fiberglass fender sander. In support of its order, appellee draws our attention to two medical reports completed in 1980. The first is a specialist's report by Dr. Phillip T. Knies based on his examination of appellant in 1980. The second medical report was prepared by appellee's medical advisor, Dr. D. H. Davies, based on his review of Dr. Knies' report. At the outset, it is significant that Dr. Knies' report was unsigned. It is well-settled that an unsigned medical report is not reliable evidence upon which the commission can base its determination as to extent of disability. See *State, ex rel. Brown,* v. *Indus. Comm.* (1983), 13 Ohio App. 3d 178, 179. See, *e.g., State, ex rel. Smith,* v. *Indus. Comm* (1986), 26 Ohio St. 3d 128, 129, and Celebrezze, C.J., concurring in pertinent part, at 130. Likewise, Dr. Davies' brief reviewing report must be discounted since it was based not on his examination of appellant but rather exclusively on a reading of Dr. Knies' unsigned report. Further, we discern that even if the later report could be accepted, its relevancy is not germane since it is couched *solely* in terms of appellant's physical condition in 1980, not the claim period of 1974-1976.[3]

The record exhibits also contain three reports completed by appellant's attending physician, Dr. Reid C. Brubaker, during the course of his treating her lung injury and bronchitis in the years 1974 and 1975. In the reports, Dr. Brubaker opines, *inter alia,* that appellant's sickness arose out of her employment and that she "has been continuously disabled ([u]nable to work) from 8-19-74 * * * through [an] [i]ndefinite [period]"; that she can not return to her "usual occupation" "* * * or foundry type work."

---

[3] Dr. Davies' reviewing report dated February 19, 1980 simply restates that Dr. Knies' unsigned report indicates that at *that* time "claimant *is* not temporarily and totally disabled." (Emphasis added.) In the case at bar, appellant made no claim for benefits for the year 1980. In fact, she had returned to a different type of work at a new employer several years earlier in 1976.

Appellant was later treated by Dr. Robert A. Williams who described her injury in a report dated January 22, 1975 as "[p]haryngitis and [b]ronchitis aggravated by working in fiberglass." He stated that her present condition was "wheezing, shortness of breath; hoarseness" and noted Dr. Brubaker's recommendation "that she not return to working in fiberglass." Later, Dr. Williams' first supplemental report stated that appellant continued to suffer from "[c]hronic bronchitis due to exposure to fiberglass." In response to the commission's question "[f]or what condition are the above dates of disability?" Dr. Williams stated, "[t]emporary totally disabled." Dr. Williams' second supplemental report also describes appellant as "[t]emporary totally disabled" and notes that "[s]ymptomatic treatment" for her "chronic bronchitis" was continuing. Dr. Roy L. Donnerberg conducted a disability examination of appellant on April 2, 1976 shortly before she returned to work (in July 1976). Dr. Donnerberg stated that the medical findings at that time did not show permanent damage (appellant's claim at bar makes no claim for permanent injuries), that her condition was then improving and that "* * * [i]t is accepted that fiberglass and most products are very innocuous to the human body. * * * I believe the evidence supports the impression that she developed some type of allergic inflammatory reaction to these industrial dusts which was out of the ordinary and which caused an acute illness related to inhalation of the particular industrial dusts as described.* * *"

Lastly, a one-sentence file entry by a commission medical advisor dated May 10, 1977, nearly one year after claimant went back to work, indicates that "the claim is approved medically for an acute bronchial allergic reaction with complete recovery without residual disability [*i.e.,* no permanent injury]." No mention of the extent of appellant's temporary impairment is included.

We have consistently held that a writ of mandamus will not issue against the Industrial Commission unless the party seeking the writ establishes a clear legal right to relief. See, *e.g., State, ex rel. Pressley,* v. *Indus. Comm.* (1967), 11 Ohio St. 2d 141 [40 O.O.2d 141]. To demonstrate a clear legal right to relief, the party must demonstrate that the commission abused its discretion. *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66].

Likewise, the members of this court have long been legion in their acceptance of the sensible rule that "* * * [w]hen a factual basis for the exercise of the commission's discretion is shown by the record, nothing more is necessary and the action of that body cannot be said to be beyond its power.* * *" *State, ex rel. Powhatan Mining Co.,* v. *Blake* (1944), 143 Ohio St. 227, 231 [28 O.O. 142].

There is no dispute that appellant left her position at Goodyear on July 23, 1974 and did not return to new employment until July 23, 1976. In this instance, we find that there is *no* reliable evidence present which supports appellee's denial of temporary total benefits for the claimed period of

unemployment. (Conversely, the referee below found that there was a lack of "some evidence" to support the commission's order.) In contrast, as outlined above, our review of the pertinent medical evidence contained in the record before this court clearly reveals ample evidence which supports appellant's factual statements and legal assertions that she had a right to receive "temporary total disability" benefits consonant with R.C. 4123.56 during the two-year period of unemployment.

In our unanimous opinion in *State, ex rel. Woodard,* v. *Frigidaire* (1985), 18 Ohio St. 3d 110, 114, we reiterated the fundamental tenet "* * * that where there is no evidence upon which the Industrial Commission can base its conclusion, mandamus will lie to correct the resulting abuse of discretion. See, *e.g., State, ex rel. Kramer,* v. *Indus. Comm.* (1979), 59 Ohio St. 2d 39, 42 [13 O.O.3d 30]." See, also, *State, ex rel. Hutton,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 9 [58 O.O.2d 66]. Such circumstances exist here.

This court concludes that there is no pertinent evidence upon which the commission could have based its factual conclusion that Case was not temporarily and totally disabled. The commission's order is thus an abuse of discretion. Therefore, the judgment of the court of appeals is reversed and a writ of mandamus is issued directing the commission to vacate its March 20, 1980 order and issue an order allowing temporary total disability benefits for the period of July 23, 1974 to July 23, 1976.[4]

*Judgment reversed*
*and writ allowed.*

CELEBREZZE, C.J., SWEENEY and C. BROWN, JJ., concur.

DOUGLAS, J., concurs in judgment only.

LOCHER, HOLMES and WRIGHT, JJ., dissent.

LOCHER, J., dissenting.  Although I agree with the majority's resolution of the laches issue, I am compelled to respectfully disagree with the allowance of the writ of mandamus.

The admission in *State, ex rel. Smith,* v. *Indus. Comm.* (1986), 26 Ohio St. 3d 128, that an unsigned medical report was "difficult to accept" by

---

[4] Appellee also argues that it has been "prejudiced" by the delay "because, *if forced to conduct further proceedings in this claim,* [it] will be compelled to consider the degree of [a]ppellant's disability ten to twelve years ago.* * *" (Emphasis added.) As is explained more fully in the text of our opinion *supra,* this assertion is premised on the faulty assertion that the delays in resolving this cause were attributable to appellant's failure to assert her rights. Further, the claimed prejudice will not in fact accrue to appellee's detriment since we find there is no reason to remand the cause for further proceedings concerning appellant's temporary disability during the years in question.

this court is not tantamount to an exclusionary rule that requires not only that we vacate the commission decision but that we grant a writ ordering temporary total disability benefits. At best I might consider allowance of a writ directing the commission to review its decision and affirmatively state why it would find such a report to be credible evidence. However, such relief is not requested by relator herein. Instead, the majority, contrary to our recent cases severely curtailing this court's role as a trier of fact in workers' compensation cases (see, *e.g., State, ex rel. Rouch,* v. *Eagle Tool & Machine Co.* [1986], 26 Ohio St. 3d 197, 200), has excluded the medical report as well as evidence relying on that report. In short, the majority is acting as a super Industrial Commission in determining what is and is not credible evidence. Accordingly, I cannot grant the writ as requested, and I dissent.

HOLMES and WRIGHT, JJ., concur in the foregoing dissenting opinion.