THE STATE EX REL. APCOMPOWER, INC., APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Apcompower, Inc. v. Indus. Comm.,* 108 Ohio St.3d 196, 2006-Ohio-659.]

(No. 2004–1896—Submitted November 8, 2005—Decided March 1, 2006.)

———————

**Per Curiam.**

{¶ 1} In this appeal, the employer objects to the payment of temporary total disability compensation.

{¶ 2} John W. Martin has an allowed workers' compensation claim stemming from a May 10, 2000 industrial accident in the course of his employment with appellant, Apcompower, Inc. Temporary total disability compensation was or-

dered from May 24, 2000, through September 27, 2000, to continue upon submission of medical proof.

{¶ 3} Apcompower exercised its right to have Martin examined by a physician of its choosing and scheduled Martin for an appointment. Martin did not attend the examinations that Apcompower had scheduled. The failure to attend prompted Apcompower to ask appellee Industrial Commission of Ohio, pursuant to R.C. 4123.651(C), to suspend all activity in Martin's claim until he attended an examination. The commission granted that request on August 20, 2001.

{¶ 4} Martin notified the Bureau of Workers' Compensation that Apcompower had sent the examination notices to the wrong address and that he had not received notice of any of the appointments. Thereafter, Apcompower scheduled—and Martin attended—an evaluation with Dr. Stephen T. Autry on March 8, 2002. Dr. Autry opined that Martin had attained maximum medical improvement. In June 2002, Apcompower sought a review of Dr. Autry's analysis from a Dr. Gibson, who concluded that through May 9, 2002, Martin's disability appeared to be related to the industrial injury.

{¶ 5} Martin's cooperation lifted his claim suspension. The examination also prompted Apcompower's motion to determine the extent of Martin's disability.

{¶ 6} A commission district hearing officer found that Martin's condition was temporary and prevented him from returning to his former position of employment. The decision was based on a report by Martin's new physician, Dr. Thomas Herbst.

{¶ 7} On December 23, 2002, a staff hearing officer, on appeal, found:

{¶ 8} "[T]he injured worker has been unable to return to and perform the duties of his former position of employment for the period 8/14/01 to the present date as a result of the allowed conditions in this claim. Therefore, temporary total compensation has been properly paid for this period based on the medical reports of Dr. Gibson and Dr. Herbst.

{¶ 9} "The Staff Hearing Officer further finds that the injured worker has reached maximum medical improvement for the allowed conditions in this claim. Therefore, temporary total compensation is ordered terminated on that basis effective the date of this hearing, 12/23/02, based on the medical report of Dr. Autry."

{¶ 10} Apcompower objected that the date of termination of temporary total disability compensation was without evidentiary support, but further appeal was denied.

{¶ 11} On July 15, 2003, Apcompower filed a complaint in mandamus in the Court of Appeals for Franklin County. The court of appeals found problems with

the evidence on which the commission relied and ordered the commission to reconsider its order.

{¶ 12} This cause is now before this court on an appeal as of right.

{¶ 13} At issue is payment of temporary total disability compensation from August 14, 2001, through December 23, 2002. Apcompower objects to payment, arguing that (1) temporary total disability compensation is improper per se from August 20, 2001, through March 8, 2002, the period of claim suspension, and (2) in any event, no evidence supports payment beyond the March 8, 2002 date of Dr. Autry's examination. Upon review, we agree with the court of appeals' analysis and affirm its judgment.

{¶ 14} Regarding the first issue, R.C. 4123.651(C) reads:

{¶ 15} "If, without good cause, an employee refuses to submit to any examination scheduled under this section * * * his right to have his claim for compensation or benefits considered * * * or to receive any payment for compensation or benefits previously granted, is suspended during the period of refusal."

{¶ 16} The statute raises a single question in this case: Does R.C. 4123.651(C) demand permanent compensation forfeiture over any period in which the statute has been invoked?

{¶ 17} Controversy centers on the word "suspend," a term undefined by R.C. Chapter 4123. Apcompower asserts that the term connotes a permanent compensation forfeiture, relying on a standard dictionary definition that actually hinders, not helps, its cause, by using equivalents such as "temporarily delay" and "interrupt."

{¶ 18} The commission stresses that, lacking a statutory definition for "suspend," R.C. 4123.95 demands that the term be liberally construed in Martin's favor. The commission also argues that the General Assembly, when it wishes to permanently bar compensation for a given period, knows how to clearly express that intent. A review of compensation statutes supports this assertion.

{¶ 19} R.C. 4123.54(B), for example, expressly states that compensation or benefits "are not payable" to an incarcerated claimant. R.C. 4123.55 directs, "*No* compensation *shall be allowed* for the first week after an injury is received or occupational disease contracted and no compensation *shall be allowed* for the first week of total disability whenever it may occur * * *." (Emphasis added.)

{¶ 20} R.C. 4123.56 through 4123.59 have passages of comparable clarity. Temporary total disability compensation payment "*shall not be made* for the period when any employee has returned to work." (Emphasis added.) R.C. 4123.56(A). The death-benefit provisions of R.C. 4123.59(B)(1) make abundantly clear that after a dependent spouse remarries, a lump sum will be paid, and thereafter, "*no further compensation* shall be paid to such spouse." R.C. 4123.57

has several similar directives. For example, *"in no instance* shall the former [partial disability compensation] award be modified unless * * * the condition of the claimant * * * has so progressed as to have increased the percentage of permanent partial disability." R.C. 4123.57(A). Similarly, "[*n*]*o award shall be made* under this division based upon a percentage of disability which, when taken with all other percentages of permanent disability, exceeds one hundred percent." Id. Finally, as to scheduled-loss awards for vision and hearing, *"in no case* shall an award of compensation be made for less than" a designated amount of disability. R.C. 4123.57(B).

{¶ 21} These provisions demonstrate the General Assembly's ability to unreservedly articulate an intention to bar the payment of compensation over a given period. R.C. 4123.651(C)'s language does not evince such an intent.

{¶ 22} Apcompower's additional reliance on R.C. 4123.53(C) and Ohio Adm. Code 4121–3–12 is misplaced. The statute provides that if the claimant "refuses" to submit to a bureau- or a commission-ordered exam, "any payment for compensation *theretofore granted,* is suspended during the period of the refusal or obstruction." (Emphasis added.) This statute is off point for two reasons. First, there was no bureau- or commission-ordered exam at issue. This exam was an employer-scheduled evaluation. This fact distinguishes Ohio Adm.Code 4121–3–12 as well. Second, there was no refusal or obstruction here. The commission ultimately found that claimant's nonattendance was due to a lack of notice, not a deliberate failure to cooperate.

{¶ 23} Apcompower's recitation of this passage also conspicuously omits the two words highlighted in the above quotation. When properly quoted in full, the statute refers to ongoing compensation granted prior to the suspension. It does not address compensation paid retroactively once the suspension has been lifted. Thus, even if applicable, R.C. 4123.53(C) does not support Apcompower's position.

{¶ 24} For all of these reasons, we find that the commission did not abuse its discretion in finding that R.C. 4123.651(C) did not bar a retroactive compensation award once the suspension was lifted. Accordingly, we turn now to the medical evidence on which the commission relied in making the award through December 23, 2002.

{¶ 25} The commission cited Drs. Herbst and Gibson in awarding temporary total disability compensation. Dr. Herbst cannot support temporary total disability compensation before May 23, 2002, because he did not examine Martin until that date. See *State ex rel. Case v. Indus. Comm.* (1986), 28 Ohio St.3d 383, 387, 28 OBR 442, 504 N.E.2d 30.

{¶ 26} Dr. Gibson's report does not suffer from a timeliness defect, but does raise questions of its own. There is an unqualified reference to "disability" that would benefit from clarification. It is also unclear whether, as a nonexamining

physician, Dr. Gibson reviewed all of the medical evidence, since his report discusses only Dr. Autry's findings in depth. Fortunately, because Dr. Gibson was retained by the commission/bureau to render an opinion on Martin's extent of disability, these ambiguities can be resolved by the commission.

{¶ 27} We accordingly affirm the judgment of the court of appeals ordering the commission to reconsider its order and issue an amended order.

Judgment affirmed.

MOYER, C.J., RESNICK, PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL and LANZINGER, JJ., concur.

---

Reminger & Reminger, Mick L. Proxmire, and Ronald A. Fresco, for appellant.

Jim Petro, Ohio Attorney General, and Kevin J. Reis, Assistant Attorney General, for appellee Industrial Commission.