DECISION
{¶ 1} Patricia Ann Rouan filed this action in mandamus seeking a writ to compel the Industrial Commission of Ohio ("commission") to grant her temporary total disability ("TTD") compensation from January 5, 2006 onward. *Page 2 
 {¶ 2} In accord with local rules, the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then prepared and filed a magistrate's decision which contains detailed findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate's decision contains a recommendation that we deny the request for a writ.
 {¶ 3} No party has filed objections to the magistrate's decision. The case is now before the court for review.
 {¶ 4} Under Civ.R. 53(D)(4)(c), if no timely objections to a magistrate's decision are filed, the court may adopt the magistrate's decision unless the court determines that there is an error of law or other defect evident on the face of the magistrate's decision. We have reviewed the magistrate's decision and find no error of law or other defect. We therefore adopt the findings of fact and conclusions of law contained in the magistrate's decision. As a result, we refuse the request for a writ of mandamus.
Writ of mandamus denied.
FRENCH and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution. *Page 3 
 APPENDIX A MAGISTRATE'S DECISION Rendered on March 21, 2007 {¶ 5} In this original action, relator, Patricia Ann Rouan, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to *Page 4 
vacate its order denying her temporary total disability ("TTD") compensation beginning January 5, 2006, and to enter an order granting said compensation.
Findings of Fact: {¶ 6} 1. On May 24, 2004, relator sustained an industrial injury while employed as a children's daycare inspector with the Mahoning County Department of Jobs and Family Services ("employer"). On that date, relator tripped and fell while at her office.
 {¶ 7} 2. The industrial claim was initially allowed for "fracture femoral condyle-closed, left; proximal tibial plateau fracture, left," and was assigned claim number 04-829452.
 {¶ 8} 3. On a C-84 dated May 26, 2005, Raymond J. Boniface, M.D., certified TTD from May 24, 2004 through the date of the C-84. On the C-84, which is purportedly signed by Dr. Boniface, the last examination date is listed as May 16, 2005.
 {¶ 9} 4. The record contains an unsigned office note dated May 16, 2005. "Raymond J. Boniface, MD" is typed beneath the typewritten office note, which states:
 On examination of the knee, there is no effusion. She is apprehensive and guarding, as usual. She is able to straight leg raise with a weak effort. Only able to tolerate flexion to about 80 degrees while supine, limited, at least in part, by her guarding.
 MRI of the left knee showed post-traumatic fracture changes and significant patellofemoral degenerative changes, but no meniscal tear or other surgical pathology.
 * * *
 She had an independent medical evaluation that agreed with the allowed diagnosis of arthrofibrosis and agreed with the treatment to date. He also agreed with my opinion that having completed her most recent therapy without change, that she is now at maximum medical improvement. *Page 5 
 * * *
 I discussed with Patricia, as I have in the past, that the only remaining procedure that could be applicable would be a total knee replacement. However, the level of her arthritis in the medial and lateral compartments is not of appropriate severity, and given her difficulty with rehabilitation issues, I would be concerned that she would not have a satisfactory result.
 In summary, it is not my opinion that knee replacement is indicated at this time.
 {¶ 10} 5. Earlier, on January 31, 2005, relator moved for recognition of an additional claim allowance.
 {¶ 11} 6. On May 13, 2005, the administrator of the Ohio Bureau of Workers' Compensation ("bureau") issued an order additionally allowing the claim for "arthrofibrosis, left knee."
 {¶ 12} 7. The employer administratively appealed the bureau's May 13, 2005 order.
 {¶ 13} 8. Following an August 11, 2005 hearing, a district hearing officer ("DHO") issued an order affirming the bureau's May 13, 2005 order.
 {¶ 14} 9. The employer administratively appealed the DHO's order of August 11, 2005.
 {¶ 15} 10. Following a September 26, 2005 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO's order of August 11, 2005. The SHO's order specifically states that the claim is allowed for the additional condition "arthrofibrosis of the left knee." *Page 6 
 {¶ 16} 11. On a C-84 dated February 17, 2006, Vincent Malkovitis, D.O., certified TTD from January 5, 2006 through an estimated return-to-work date of June 5, 2006. Dr. Malkovitis listed "arthrofibrosis" as the allowed condition preventing return to work. The C-84 was filed on March 2, 2006.
 {¶ 17} 12. On April 18, 2006, at the bureau's request, relator was examined by Oscar F. Sterle, M.D., who wrote:
 In my medical opinion, based on the medical history obtained from the claimant, the findings of my examination and review of the medical file, the claimant has reached a treatment plateau and is at maximum medical improvement for the allowed conditions of fracture of the femur, fracture of the tibia, and arthrofibrosis of the left knee. These conditions have resolved and are permanent.
 {¶ 18} Following a May 25, 2006 hearing, a DHO issued an order denying relator's request for TTD compensation based on Dr. Malkovitis's C-84 filed March 2, 2006. The DHO's order states:
 The District Hearing Officer finds that the basis for the injured worker's request for temporary total disability benefits is the newly allowed condition in the claim of ARTHRO-FRIBROSIS [sic] LEFT KNEE. The other allowed conditions in the claim having been found to have reached maximum medical improvement in 2005.
 The District Hearing Officer finds that based on the 5/16/05 office note of Dr. Boniface who was the physician of record at the time, that this condition had reached maximum medical improvement as of that date.
 Therefore, the District Hearing Officer finds that the injured worker has failed to submit evidence of new and changed circumstances warranting the resumption of temporary total disability benefits.
 In so ruling the District Hearing Officer relies on the 5/16/05 office note of Dr. Boniface. *Page 7 
(Emphasis sic.)
 {¶ 19} 14. Relator administratively appealed the DHO's order of May 25, 2006.
 {¶ 20} 15. Following a June 28, 2006 hearing, an SHO issued an order affirming the DHO's order of May 25, 2006. The SHO's order of June 28, 2006, explains:
 The Staff Hearing Officer specifically denies authorization for the payment of Temporary Total Disability Compensation for the period from 01/05/2006 through 06/28/2006, the date of today's hearing, as the Injured Worker has failed to demonstrate that the period of disability was actually temporarily and totally disabling and independently attributable to the allowed conditions in this claim.
 By way of clarification, the Staff Hearing Officer finds that the originally allowed conditions in this claim were previously found to have reached a level of maximum medical improvement. However, subsequent to that finding, this claim was also additionally allowed for the condition of arthrofibrosis of the left knee. It is found that the current request for compensation is predicated solely upon this newly allowed condition of arthrofibrosis.
 The Staff Hearing Officer concludes that the Injured Worker has failed to demonstrate by a preponderance of the evidence that said period of temporary total disability was actually temporarily and totally disabling as alleged. The Staff Hearing Officer concludes that the condition of arthrofibrosis of the left knee is actually at a level of maximum medical improvement and the Injured Worker has failed to demonstrate by a preponderance of the evidence that this condition has once again become temporarily and totally disabling. The Staff Hearing Officer, in reaching this conclusion, relies upon the 05/16/2005 office visit note of Dr. Boniface, M.D., the physician of record at that time, who opined that the condition of arthrofibrosis of the left knee was at a level of maximum medical improvement.
 The Staff Hearing Officer concludes that the Administrator's authorization of the change of physician and the one time visit with a pain management specialist subsequent to said opinion of maximum medical improvement, does not con-stitute new and changed circumstances sufficient to warrant a conclusion *Page 8 
that the condition of arthrofibrosis has once again become temporarily and totally disabling.
 Accordingly, the Injured Worker's request for Temporary Total Disability Compensation is denied.
 {¶ 21} 16. On July 18, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of June 28, 2006.
 {¶ 22} 17. On September 11, 2006, relator, Patricia Ann Rouan, filed this mandamus action.
Conclusions of Law: {¶ 23} The only issue relator attempts to raise here is whether the May 16, 2005 office note fails to constitute some evidence upon which the commission relied because the office note is not signed by Dr. Boniface.
 {¶ 24} The magistrate finds: (1) the May 16, 2005 office note must be viewed as signed by Dr. Boniface, and thus constitutes some evidence upon which the commission can rely; and (2) in any event, relator is precluded from challenging the May 16, 2005 office note on grounds that it is unsigned because relator failed to administratively challenge the office note on that ground.
 {¶ 25} Accordingly, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} At the outset, the magistrate observes that the SHO's order of June 28, 2006, affirmatively relies upon the May 16, 2005 office note to support a finding that arthrofibrosis of the left knee is at maximum medical improvement ("MMI"). That is, the May 16, 2005 office note was not merely used to discredit the credibility of Dr. Malkovitis's C-84 filed March 2, 2006. *Page 9 
 {¶ 27} State ex rel. LTV Steel Co. v. Indus. Comm. (1999),85 Ohio St.3d 75, 76, is instructive here. In LTV Steel, the commission awarded PTD compensation to George Grecu based upon reports from Dr. Kang. Nearly all of Dr. Kang's reports were authenticated with a signature stamp. These reports also contained the stamped statement: "`Signed in my absence to avoid delay in mailing.'"
 {¶ 28} LTV Steel challenged the PTD award by filing a mandamus action in this court. Viewing the reports of Dr. Kang to be unsigned, this court found that the reports could not constitute evidence upon which the commission could award compensation. On an appeal as of right, the Supreme Court of Ohio held that Dr. Kang's reports should have been considered signed. The court explained:
 The appellate court based its decision on several cases that dealt with reports that were completely unsigned. In State ex rel. Brown v. Indus. Comm. (1983), 13 Ohio App.3d 178, 179, 13 OBR 213, 214, 468 N.E.2d 777, 778, the report at issue was dictated "but not read or signed." The court held that an unsigned report could not be proper evidence, stating that "[t]he potential for inaccuracy is too great to depend upon such a statement." 13 Ohio App.3d at 179, 13 OBR at 214, 468 N.E.2d at 778.
 In State ex rel. Smith v. Indus. Comm. (1986), 26 Ohio St.3d 128, 129, 26 OBR 110, 110-111, 498 N.E.2d 447, 447-448, a workers' compensation case, this court refused to consider as evidence a report that was inscribed "DICTATED BUT NOT READ."
 In State ex rel. Case v. Indus. Comm. (1986), 28 Ohio St.3d 383, 387, 28 OBR 442, 445, 504 N.E.2d 30, 35, this court stated that "[i]t is well-settled that an unsigned medical report is not reliable evidence upon which the commission can base its determination as to extent of disability."
 The significant difference in this case is that the reports of Dr. Kang are, in fact, signed. The signatures were not made by Dr. Kang's own hand, but they were done at his direction. *Page 10 
 Under Ohio statutes governing commercial paper (which mirror the Uniform Commercial Code), a signature need not be made by the hand of the signer:
 "A signature may be made manually or by means of a device or machine and by the use of any name, including a trade or assumed name, or by a word, mark, or symbol executed or adopted by a person with present intention to authenticate a writing." R.C. 1303.41(B).
 Pursuant to R.C. 1301.01(MM), "`signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing."
 Ohio statutory law on wills, too, does not require a testator's signature to be his own. Pursuant to R.C. 2107.03, the signature of a testator on a will may be made by another person in the testator's presence at the testator's direction.
 We see no reason to hold a doctor's report in a workers' compensation case to a higher standard than a piece of commercial paper or a will. We find that a signature-stamped report constitutes a signed report that may be relied upon by the Industrial Commission in deciding whether to award compensation.
 We believe that the appellate court overstated the potential problems of signature-stamped reports when it wrote that "[a signature stamp] allows the author to repudiate the report as having been stamped and mailed without his or her approval." In this case, the stamp "Signed in my absence to avoid delay in mailing" indicates that Dr. Kang knew about the signature affixed to the report and intended for it to authenticate the report. A signature stamp provides an indicia of legitimacy that an unsigned report lacks. Also, truly falsified reports would likely bear more damning evidence of unreliability than the mere unauthorized use of a signature stamp. For instance, a lack of consistency with other reports filed by the same doctor, a dramatic worsening of a condition, or the sudden appearance of a new condition would be telling. Also, in the end, each report is subject to repudiation by an opposing party's doctor's report.
 Relator did not question the authenticity of the reports at the hearing officer level nor in its appeal to the Industrial Commission. *Page 11 
To now allow relator to prevail on this issue would be honoring form over substance. This is especially the case where the procedural posture of the matter leaves the respondent unable to defend the integrity of the document. For instance, in this case, after the record closed, Dr. Kang wrote in a January 16, 1997 letter to claimant's counsel that "the letters you received from this office under my name on behalf of Mr. Grecu are letters that have been sent under my direction and responsibility and, even though the signature was stamped, it is authentic under my authorization."
(Emphasis sic.) Id. at 80-82.
 {¶ 29} In the magistrate's view, the May 16, 2005 office note must be viewed as having been signed by Dr. Boniface because he signed the May 26, 2005 C-84 that references the May 16, 2005 examination. In effect, Dr. Boniface's signature on the C-84 certifies that he examined relator on May 16, 2005. Thus, the C-84's reference to the May 16, 2005 examination is an indicia of the legitimacy of the May 16, 2005 office note.
 {¶ 30} Moreover, notwithstanding that the DHO's order of May 25, 2006, relies upon the May 16, 2005 office note to support a determination that the arthrofibrosis left knee has reached MMI, there is no evidence that, on the administrative appeal to the SHO, relator challenged the May 16, 2005 office note on grounds that it was unsigned.
 {¶ 31} In fact, the SHO's order of June 28, 2006, is completely silent as to the issue relator raises here. Apparently, at the staff level hearing, relator challenged the DHO's MMI finding based upon alleged new and changed circumstances. The SHO rejected relator's claim to new and changed circumstances and relator does not challenge that decision here. *Page 12 
 {¶ 32} Thus, relator is precluded from challenging the May 16, 2005 office note on grounds that it is unsigned. State ex rel. Quarto MiningCo. v. Foreman (1997), 79 Ohio St.3d 78; State ex rel. Xerox Corp. v.Indus. Comm., Franklin App. No. 05AP-140, 2006-Ohio-2680.
 {¶ 33} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus. *Page 1