DECISION
{¶ 1} Relator, Diana Basile, has filed an original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying relator's request for temporary total disability ("TTD") compensation, beginning January 18, 2005, and to order the commission to issue a new order finding she is entitled to such compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, recommending that this court deny relator's requested writ. (Attached as Appendix A.)
 {¶ 3} Relator has filed objections to the magistrate's decision. Relator primarily challenges the report of Dr. Robert Madrigal, who opined in his December 2004 report that relator was suffering from a "very mild Depressive Disorder NOS which is not work prohibitive." Relator argues that the report is unreliable because Dr. Madrigal evaluated relator at a time when she was working; relator maintains that substantial changes occurred between the time of that evaluation and events approximately one month later when relator's employment ended. Relator contends that, based upon those changes, the only credible evidence before the commission was documentation submitted by Dr. Michael Drown, who signed a C-84 certifying a disability date beginning January 18, 2005.
 {¶ 4} Relator similarly argued, before the magistrate, that Dr. Madrigal's report could not be relied upon because he did not examine relator during her period of disability. The magistrate, however, found that Dr. Madrigal's report constituted some evidence upon which the commission could rely to deny TTD compensation, rejecting relator's suggestion that her unemployment, beginning January 14, 2005, somehow rendered Dr. Madrigal's disability opinion non-probative.
 {¶ 5} Upon review, we agree with the magistrate that relator has not shown that Dr. Madrigal's report was non-probative merely because relator was still working at the time of that evaluation on December 10, 2004. We recognize that the "probative value of a medical report may be lessened by later changes in the claimant's condition[.]" State ex rel. Menold v. Maplecrest Nursing Home
(1996), 76 Ohio St.3d 197, 202. However, in the instant case, it is clear the commission did not find that relator's condition changed so dramatically between Dr. Madrigal's evaluation and the time of her unemployment as to render the evaluation insignificant, nor did it find credible Dr. Drown's explanation as to why, after relator's seasonal employment ended on January 14, 2005, relator's depressive disorder became temporarily and totally disabling just four days later. It was within the province of the commission to make such a credibility determination. Id.
 {¶ 6} Further, apart from relator's challenge to the report of Dr. Madrigal, there was other evidence to support the commission's decision. Specifically, the staff hearing officer ("SHO") cited relator's own testimony that: (1) she chose not to re-apply for non-seasonal employment after January 14, 2005, and (2) her decision was based upon her belief that the "physical" demands of the job were too strenuous. The SHO further noted that relator did not recall Dr. Drown advising her to quit work due to her emotional problems prior to the time her seasonal work ended on January 14, 2005. Finally, as noted above, the SHO also found that, because there was no documentation that Dr. Drown advised relator to leave work due to her depressive disorder before her seasonal work ended on January 14, 2005, "his after-the-fact certification of psychological disability as of 01/18/2005 is not found credible." Here, because the record contains some evidence to support the commission's denial of relator's request for TTD compensation, we find no merit to relator's objections.
 {¶ 7} After an examination of the magistrate's decision, as well as an independent review of the evidence, we overrule relator's objections to the magistrate's decision, finding that the magistrate sufficiently discussed and determined the issues raised by relator. Accordingly, we adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein, and deny relator's request for a writ of mandamus.
Objections overruled; writ denied.
Petree and McGrath, JJ., concur.
 APPENDIX A IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
[State ex rel.] Diana Basile, : Relator, : :
v. : No. 05AP-464 :
Dublin Suites Inc. and Industrial: (REGULAR CALENDAR) Commission of Ohio, : :
Respondents. : :
 MAGISTRATE'S DECISION Rendered on September 30, 2005 Michael J. Muldoon, for relator.
Beirne Wirthlin Co., L.P.A., and Michael J. Schutte, for respondent Dublin Suites, Inc.
Jim Petro, Attorney General, and Charissa D. Payer, for respondent Industrial Commission of Ohio.
 IN MANDAMUS {¶ 8} In this original action, relator, Diana Basile, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying her request for temporary total disability ("TTD") compensation beginning January 18, 2005, and to enter an order granting said compensation.
Findings of Fact:
 {¶ 9} 1. On April 9, 2002, relator sustained an industrial injury while employed as a cook for respondent Dublin Suites, Inc., a state-fund employer. The industrial claim was initially allowed for "right shoulder strain; tear right rotator cuff," and is assigned claim number 02-342973.
 {¶ 10} 2. On July 20, 2004, relator moved that her industrial claim be additionally allowed for a psychological condition based upon a July 5, 2004 report from psychologist Michael Glenn Drown, Ph.D.
 {¶ 11} 3. On September 15, 2004, relator was examined, at the request of the Ohio Bureau of Workers' Compensation ("bureau"), by psychiatrist Ronald Litvak, M.D. In his report, dated September 20, 2004, Dr. Litvak opined that relator suffers from a "depressive disorder" that is causally related to her industrial injury.
 {¶ 12} 4. On October 27, 2004, the bureau mailed an order additionally allowing the claim for "depressive disorder" based upon Dr. Litvak's report. The employer administratively appealed.
 {¶ 13} 5. The employer dismissed its appeal from the bureau's October 27, 2004 order. The employer's dismissal is recognized in a commission order mailed January 6, 2005.
 {¶ 14} 6. On December 10, 2004, relator was examined, at the employer's request, by psychologist Roberto Madrigal, Ph.D. In his report, dated December 13, 2004, Dr. Madrigal wrote:
Work History
She worked in Italy for her father who was a tailor. Once in the U.S.A. she worked for her brother who was also a tailor. She then started doing some cooking for catering from her house. She then worked as a cook for the Westin and then for Embassy Suites. She is now working at Target Distribution Center.
Industrial Injury
Her industrial injury occurred on April 9, 2002. She was working with a salad spinner and injured her shoulder. She was seen at ER and then she continued to work. She left Embassy Suites because "they pushed me out".
* * *
Psychological History
Claimant denied any family history of psychological problems. She had never been treated by a mental health professional. After her injury, she started getting depressed because it was hard for her to keep working. She was put on Lexapro and Lorazepam.
* * *
Opinion
Results from this evaluation do support the presence of a mild depressive disorder which appears to be a direct result of the injury but which is not by itself a work prohibitive condition.
Based on the evidence submitted and the evaluation results, and in response to your questions, it is my opinion, with a reasonable degree of psychological certainty that:
1) Ms. Basile suffers from a very mild Depressive Disorder NOS which is not work prohibitive but which is directly related to the industrial injury.
 {¶ 15} 7. The record contains a report from Dr. Drown dated January 27, 2005. In the report, Dr. Drown states that relator "registered as a client in this office on 12/06/04," and that she was "very much in need of psychotherapy."
 {¶ 16} 8. On January 18, 2005, on form C-84, Dr. Drown certified a period of TTD beginning January 18, 2005 to an estimated return-to-work date of April 19, 2005, based on the "depressive disorder."
 {¶ 17} 9. On January 24, 2005, the bureau mailed an order granting TTD compensation beginning January 18, 2005, based upon Dr. Drown's C-84. The employer administratively appealed the bureau's order of January 24, 2005.
 {¶ 18} 10. On March 15, 2005, Dr. Drown wrote:
I have reviewed the 12/13/04 Dr. Ralph Madrigal evaluation regarding Mrs. Diana Basile. The upshot of this report is the two fold conclusion that Mrs. Basile does not suffer from [sic] much from any psychological disorder other than a very mild depressive disorder, and thus she does not have a condition that is work prohibitive. I disagree with this two fold conclusion. I have worked with Mrs. Basile on a weekly basis since 12/6/04. I even administered appropriate psychometric testing during that time frame. She revealed herself to have significant features of depressive disorder not only in her test profile but also during our weekly contact. The two test[s] administered include: the Beck Depression Inventory (BDI) and the Millon Clinical Multiaxial Inventory (MCMI). On the BDI she attained a score of 47 which falls in the range of severe depression. In that inventory she related that she has suicidal thoughts, was so unhappy that she could not snap out of it. Felt that her future was hopeless. Feels guilty all of the time. She hates herself. She cries much of the time. She lost all interest in other people. She has great difficulty making decisions. She wakes up several hours earlier than she used to and cannot get back to sleep. She is very worried about her work injury physical conditions getting worse. The MCMI reveals a valid profile with significant elevations on dysthymia, anxiety and psychogenic pain. These three elevated scales would certainly include her BWC allowed diagnosis of depressive disorder. Mrs. Basile works hard in therapy. She would like to recover to the point where she could work again. Presently her cognitive functions including memory, attention span, concentration and perception are compromised by her present heightened level of distress. She is not able to adapt even to ordinary work atmospheres without representing a risk to life or limb and to the ordinary operation of work activities. Our goals in cognitive behavioral therapy include vocational retraining when she is ready to be able to learn from such a program. This necessarily will require making more headway in stress management.
In summary, Mrs. Basile has by no means reached MMI. Her record and test data reveals that she is making progress. She is moving strongly in the direction of emotional stability for accepting a referral for a vocational placement counselor; she will have no chance of finding his [sic] way back to employment without working with a professional in this regard.
 {¶ 19} 11. Following a March 15, 2005 hearing, a district hearing officer ("DHO") issued an order that vacates the bureau's order of January 24, 2005. The DHO's order states:
The District Hearing Officer denies temporary total disability compensation from 01/18/2005 to today's date, 03/15/2005. The District Hearing Officer finds that temporary total disability compensation is not causally related to the depressive disorder allowed in the claim.
Ms. Basile began treatment with Dr. Drown on 12/06/2004. On 01/14/2005, her seasonal employment with Target ended. Dr. Drown provides no explanation as to why the depressive disorder thereafter became temporarily and totally disabling just four days later.
Lacking this explanation, the District Hearing Officer finds persuasive the 12/13/2004 examination report from Dr. Madrigal who opined that the depressive disorder was not work prohibitive.
 {¶ 20} 12. Relator administratively appealed the DHO order of March 15, 2005.
 {¶ 21} 13. Following an April 21, 2005 hearing, a staff hearing officer ("SHO") issued an order affirming the DHO order of March 15, 2005. The SHO's order explains:
The Staff Hearing Officer affirms the District Hearing Officer's denial of requested temporary total disability compensation benefits from 01/18/2005 to 03/15/2005 and further.
The Staff Hearing Officer notes that the claimant is solely relying on her allowed depressive disorder as the basis for her disability as of 01/18/2005.
In this regard the District Hearing Officer pointed out the claimant was working for a different employer, Target, as a seasonal employee. That seasonal position ended on or about 01/14/2005 and the claimant stated per her testimony at hearing that she chose not to reapply for non-seasonal employment at Target after 01/14/2005.
At hearing the claimant testified that the physical demands of the job at Target were too strenuous for her, so she decided not to reapply for work. She also testified that even though she started seeing Dr. Drown, her psychologist in December 2004, while she was working, that she couldn't recall him advising her to quit work due to her emotional problems prior to her seasonal work ending on 01/14/2005. Dr. Drown did later on 01/18/2005 fill out a C-84 certifying the claimant off work due to the allowed psychological condition as of 01/18/2005.
Based on the claimant's testimony, the Staff Hearing Officer finds that the claimant didn't work after 01/14/2005 not due to her depressive disorder as alleged, but due to her perception that she couldn't physically perform the work at Target.
Also, because there is no documentation that Dr. Drown advised the claimant to leave work due to her depressive disorderbefore her seasonal work ended on 01/14/2005, that his after-the-fact certification of psychological disability as of 01/18/2005 is not found credible.
For the aforementioned reasons the request for temporary total disability benefits as of 01/18/2005 due to the allowed depressive disorder remains denied.
(Emphasis sic.)
 {¶ 22} 14. On May 6, 2005, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of April 21, 2005.
 {¶ 23} 15. On May 11, 2005, relator, Diana Basile, filed this mandamus action.
Conclusions of Law:
 {¶ 24} The main issue is whether Dr. Madrigal's report is some evidence upon which the commission can rely to deny TTD compensation beginning January 18, 2005.
 {¶ 25} Finding that Dr. Madrigal's report is some evidence upon which the commission can rely to deny TTD compensation beginning January 18, 2005, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 26} The Supreme Court of Ohio has consistently held that a doctor cannot offer an opinion on a claimant's extent of disability for a period that preceded the doctor's examination of the claimant. State ex rel. Case v. Indus. Comm. (1986),28 Ohio St.3d 383; State ex rel. Foreman v. Indus. Comm. (1992),64 Ohio St.3d 70, 72; State ex rel. Foor v. Rockwell Internatl.
(1997), 78 Ohio St.3d 396, 399. However, this general rule has an exception. An examining physician can offer a retrospective disability opinion if he reviews all the relevant medical evidence generated prior to his examination. State ex rel. Bowiev. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 458.
 {¶ 27} On the other hand, a prospective medical opinion is generally viewed as probative unless it can be shown that an intervening event or time itself has negated its probative value. Two cases illustrate this proposition of law.
 {¶ 28} In State ex rel. Menold v. Maplecrest Nursing Home
(1996), 76 Ohio St.3d 197, the commission denied a second PTD application based upon the report of Dr. McCloud who had examined the claimant on November 20, 1989. The second PTD application was filed two months after the commission denied the first PTD application on April 18, 1990.
 {¶ 29} In finding Dr. McCloud's report to be probative as to the second PTD application, the Menold court states:
The commission is exclusively responsible for judging evidentiary weight and credibility. State ex rel. Burley v. CoilPacking, Inc. (1987), 31 Ohio St.3d 18 * * *. Claimant's contention that McCloud's report is nonprobative simply because it predates the claimed disability period lacks merit. Certainly, the probative value of a medical report may be lessened by later changes in the claimant's condition, and the longer the time between the report and the disability alleged, the more likely this is to have occurred. Claimant, however, has failed to show that McCloud's report was no longer probative.
Id. at 202.
 {¶ 30} The second case that illustrates the proposition of law is State ex rel. Conrad v. Indus. Comm. (2000), 88 Ohio St.3d 413. In the Conrad case, Dr. Rutherford had examined the claimant in October 1994 and found that "she would not benefit from any further surgical procedure at this time." One month later, the claimant had an acute exacerbation of her lower back condition that required emergency hospitalization. In mid October 1995, the claimant's treating physician, Dr. Rohner, sought emergency authorization for surgery. The self-insured employer refused to authorize the surgery and the commission denied the claimant's request for authorization, citing Dr. Rutherford's report. The Conrad court held that Dr. Rutherford's report was not probative of the need for surgery following the 1994 exacerbation of claimant's condition.
 {¶ 31} Here, relator incorrectly asserts that a doctor who does not examine the claimant during her period of disability cannot be relied upon to support a denial of TTD compensation. (Relator's brief, at 7.) The two cases cited by relator,Foreman and State ex rel. Abner v. Mayfield (1992),62 Ohio St.3d 423, do not support relator's stated proposition.
 {¶ 32} Clearly, Dr. Madrigal's report cannot be eliminated from evidentiary consideration simply because Dr. Madrigal examined relator prior to her claimed period of disability.
 {¶ 33} However, relator further claims that Dr. Madrigal's report is nonprobative because relator was working when Dr. Madrigal examined her.
 {¶ 34} Indeed, according to Dr. Madrigal's report, relator was working at "Target Distribution Center" when she was examined. Dr. Madrigal opined that relator "suffers from a very mild Depressive Disorder NOS which is not work prohibitive."
 {¶ 35} As reported in the SHO order of April 21, 2005, relator's seasonal job at Target ended on or about January 14, 2005. She testified that she decided not to reapply for nonseasonal work at Target because the physical demands of the job were too strenuous for her. Dr. Drown certified a period of TTD beginning four days later on January 18, 2005.
 {¶ 36} Relator seems to suggest that her unemployment beginning on or about January 14, 2005, renders Dr. Madrigal's disability opinion nonprobative. The magistrate disagrees with relator's suggestion or argument.
 {¶ 37} Assuming for the sake of argument that unemployment can exacerbate a depressive disorder, there is no medical evidence in the record to indicate that relator's unemployment exacerbated her depressive disorder. In his January 27 and March 15, 2005 reports, Dr. Drown does not address relator's unemployment or her decision to not seek employment after her seasonal job was to end. If Dr. Drown had indicated that relator's unemployment exacerbated her depressive disorder to such an extent that she was rendered unable to work, the commission would have had the duty to weigh such evidence and conceivably could have concluded that Dr. Madrigal's report was nonprobative of the claimed period of disability.
 {¶ 38} However, under the circumstances here, the commission was free to accept Dr. Madrigal's report as being probative of the claimed period of disability.
 {¶ 39} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.