DECISION
{¶ 1} Relator, Raul Estremera, has filed this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio *Page 2 
("commission"), to vacate its order that denied relator's application for permanent total disability compensation and ordering the commission to find that relator is entitled to that compensation.
 {¶ 2} This matter was referred to a magistrate of this court, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny relator's request for a writ of mandamus. (Attached as Appendix A.) No objections have been filed to that decision.
 {¶ 3} As there have been no objections filed to the magistrate's decision, and it contains no error of law or other defect on its face, based on an independent review of the evidence, this court adopts the magistrate's decision. Relator's request for a writ of mandamus is denied.
Writ denied.
 McGRATH, P.J., and FRENCH, J., concur. *Page 3 APPENDIX A MAGISTRATE`S DECISION Rendered December 20, 2007 {¶ 4} Relator, Raul Estremera, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio *Page 4 
("commission") to vacate its order which denied relator's application for permanent total disability ("PTD") compensation and ordering the commission to find that relator is entitled to that compensation.
Findings of Fact: {¶ 5} 1. Relator sustained a work-related injury on February 3, 1999, and his claim has been allowed for:
 CERVICAL STRAIN; AGGRAVATION OF PRE-EXISTING CERVICAL DISC DISEASE; RIGHT SHOULDER SPRAIN/-STRAIN; THORACIC STRAIN; BLUNT HEAD TRAUMA; SUBACROMIAL BURSITIS RIGHT SHOULDER; SUPRA-SPINATUS INFRASPINATUS TENDON MUSCLE TEAR RIGHT SHOULDER.
 {¶ 6} 2. Relator was paid temporary total disability ("TTD") compensation from May 11 through May 29, 1999. The record indicates that relator returned to work until August 1, 1999, when he retired. It is undisputed that relator worked for TRW, Inc. ("employer"), for 30 years.
 {¶ 7} 3. Relator filed a request for TTD compensation beginning in July 2004. Relator's employer argued that relator's retirement with 30 years of service on August 1, 1999 constituted his voluntary removal from the workforce and precluded an award of TTD compensation.
 {¶ 8} 4. Relator's motion was heard before a district hearing officer ("DHO") in April 2005 and was denied on grounds that relator had retired from the workforce in 1999 and had no desire to return to work. *Page 5 
 {¶ 9} 5. Relator's appeal from the DHO's order was heard before a staff hearing officer ("SHO") in May 2005. The SHO affirmed the prior order based upon the medical report of Paul Freedman, M.D., and the fact that relator had retired from the workforce.
 {¶ 10} 6. Relator's further appeal was refused by an order of the commission and, thereafter, relator filed a mandamus action in this court.
 {¶ 11} 7. In his mandamus action, relator had argued that the commission abused its discretion when it found that his retirement was "voluntary" and was not caused by the allowed conditions in his claim. This court found that the commission did not abuse its discretion in finding that relator's retirement was voluntary and that the commission did not abuse its discretion in denying him TTD compensation. SeeState ex rel. Estremera v. TRW, Inc., Franklin App. No. 05AP-619,2006-Ohio-2604.
 {¶ 12} 8. In August 2005, relator filed his application for PTD compensation. On that application, relator indicated that he was 67 years old, had completed the ninth grade in 1953 while living in Puerto Rico, did not graduate from high school, did not receive a GED, and did not have any specialized training. Relator further indicated that he could read, write, and perform basic math; however, not well.
 {¶ 13} 9. Relator's application was supported by the August 10, 2005 report of Cyril E. Marshall, M.D., who opined as follows:
 It is my medical opinion, to a reasonable degree of certainty, that Raul Estremera is permanently and totally disabled as a direct result of the conditions outlined in this claim. He suffers with chronic and progressive neck and shoulder pain. Appropriate treatment over the past four years has been denied. Independent examiners and the employer's representative have deemed no surgery approach is indicated or appropriate and that treatment will not improve his current status. That being said, his neck and shoulder *Page 6 
conditions are disabling in nature and the disability is permanent. The permanent and total disability relates directly to the conditions in this claim.
 {¶ 14} 10. Relator was seen by Ronald G. Hawes, M.D., who prepared a report dated July 24, 2006. After providing his physical findings upon examination, Dr. Hawes opined that relator's allowed conditions had reached maximum medical improvement, assessed a nine percent whole person impairment, and opined that relator was capable of performing light-duty work with no further restrictions.
 {¶ 15} 11. Relator submitted the vocational report of Barbara E. Burk, CRC, LPC, from September 2006. Ms. Burk determined that relator's age, education, and prior work history were all barriers to his ability to become re-employed. Further, she opined that relator did not have the skills to successfully participate in any vocational rehabilitation.
 {¶ 16} 12. A vocational report was also prepared by Amy L. Corrigan, M.Ed., CRC, from September 2006.[1] Ms. Corrigan concluded as follows:
 Considering work experience, education, and individual presentation, Raul has the following employable skills or attributes: bilingual verbal language skills (Spanish/English); a technical background involving 30+ years in automotive manufacturing/industrial environments (grinder, spray painter, foundry); remote experience as a warehouse picker with a major department store (May Company); restaurant/food service skills (kitchen helper); farm labor experience involving growing/picking vegetable/fruit crops (1950 to 1956); and a pleasant personality with a generally positive presentation. Raul's transferable skills suggest there are some jobs available for reemployment, pending consideration of entry-level/modified positions, supported job development efforts, and/or extended geographic search locations. *Page 7 
 {¶ 17} Thereafter, Ms. Corrigan listed 22 possible jobs which, in her opinion, relator could perform.
 {¶ 18} 13. Relator's application was heard before an SHO on July 16, 2007 and was denied. The SHO relied upon the medical report of Dr. Hawes and concluded that relator was capable of performing light-duty work. The SHO determined that relator's current age of 68 years was a negative vocational factor. The SHO did determine that relator's limited education was a positive vocational factor, finding that a limited education means the person has the reasoning, arithmetic, and language skills to perform the less complicated job duties needed in semi-skilled and skilled work. The SHO found relator's work history was consistent with his educational level and considered it a positive vocational factor since it demonstrated a strong work ethic and had provided him with transferable skills. The SHO noted that Ms. Corrigan had identified approximately 20 jobs for which relator's prior employment had provided him with transferable skills.
 {¶ 19} After concluding that relator was capable of performing some sustained remunerative employment at the light-duty level, the SHO discussed the impact of relator's retirement on his eligibility for PTD compensation. First, the SHO specifically noted that relator's retirement from employment had previously been adjudicated to be voluntary and not medically motivated when relator was denied TTD compensation. Examining the issue anew, the SHO found as follows:
 The instant Staff Hearing Officer further finds the injured worker's retirement was voluntary, was not medically-motivated, and demonstrated an intent to abandon the work force. The injured worker's contention that this voluntary retirement was precipitated by the injury in this claim was not found persuasive. The injured worker has presented no medical evidence which is contemporaneous to the date of *Page 8 
retirement which indicated the injured worker's condition had worsened or become work-prohibitive. As noted previously, for the two months preceding the injured worker's retirement the injured worker had returned to work at his former position of employment without restrictions.
 The injured worker's retirement on 8/1/99 was seniority-based. It coincided precisely with the injured worker's eligibility for retirement due to thirty years of service with this employer and in anticipation of his eligibility for the receipt of Social Security Retirement benefits on his sixty-second birthday which occurred on 8/3/00.
 The injured worker testified at hearing that he has not worked in any capacity or looked for employment since his retirement date. The injured worker further indicated that since his retirement he has had [sic] not been interested in vocational rehabilitation or retraining for a less strenuous position. The Staff Hearing Officer finds this to be indicative of the injured worker's intent to abandon the work force with his retirement on 8/1/99. Therefore, the injured worker's voluntary retirement precludes his eligibility for permanent total disability compensation pursuant to State, ex rel. Baker Material Handling Corporation. v. Industrial Commission (1994), 69 Ohio St. 3d 202.
 {¶ 20} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 21} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse *Page 9 
of discretion and mandamus is not appropriate. State ex rel. Lewis v.Diamond Foundry Co. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v.Indus. Comm. (1981), 68 Ohio St.2d 165.
 {¶ 22} The relevant inquiry in a determination of permanent total disability is the claimant's ability to do any sustained remunerative employment. State ex rel. Domjancic v. Indus. Comm. (1994),69 Ohio St.3d 693. Generally, in making this determination, the commission must consider not only medical impairments, but also the claimant's age, education, work record and other relevant nonmedical factors. State exrel. Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. Thus, a claimant's medical capacity to work is not dispositive if the claimant's nonmedical factors foreclose employability. State ex rel. Gay v.Mihm (1994), 68 Ohio St.3d 315. The commission must also specify in its order what evidence has been relied upon and briefly explain the reasoning for its decision. State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203.
 {¶ 23} Relator makes two arguments in this mandamus action. First, relator argues that the commission abused its discretion by relying on the unsigned vocational report of Ms. Corrigan. Second, relator argues that the commission abused its discretion by finding that his retirement was voluntary and precluded him from receiving PTD compensation. For the reasons that follow, this magistrate disagrees.
 {¶ 24} Relator cites Ohio Adm. Code 4121-3-34(C) and State ex rel. Casev. Indus. Comm. (1986), 28 Ohio St.3d 383, in support of his argument that the commission abused its discretion by relying on the unsigned vocational report. In Case, the court *Page 10 
stated that an unsigned medical report is not reliable evidence upon which the commission can rely in its determination concerning the extent of disability.
 {¶ 25} In the present case, the report at issue was not a medical report. The report was a vocational report. The rationale fromCase indicating that unsigned reports cannot be relied upon due to the potential for inaccuracy could be said to apply in a limited sense to vocational reports. However, in this case, the magistrate finds that the commission did not abuse its discretion.
 {¶ 26} First, while it is undisputed that the vocational report of Ms. Corrigan submitted at the SHO hearing was unsigned, it is also undisputed that a signed copy was faxed to the hearing officer that same day. As such, the hearing officer did have the signed report to consider. Second, the SHO did not specifically rely upon the vocational report of Ms. Corrigan. While it is true that the hearing officer did note that Ms. Corrigan had identified approximately 20 jobs which relator was capable of performing, the commission conducted its own analysis of the nonmedical disability factors and concluded that relator was capable of performing some sustained remunerative employment. As such, the magistrate finds that the commission did not abuse its discretion in this regard.
 {¶ 27} Relator also contends that the commission abused its discretion by finding that his retirement was voluntary and not related to his allowed conditions. Relator argues that all of the medical evidence submitted indicates that relator's retirement was, in fact, due to the allowed conditions in this claim.
 {¶ 28} In determining that relator's retirement was voluntary, the hearing officer specifically noted that issue had previously been adjudicated when relator was denied *Page 11 
TTD compensation in May 2005. At that time, the commission determined that relator's retirement was voluntary and not based on his allowed conditions. Relator filed a writ of mandamus in this court challenging that finding. As noted in the findings of fact, this court found that the commission had not abused its discretion in finding that his retirement was voluntary.
 {¶ 29} In his brief, relator does not discuss the commission's previous finding which was upheld by this court. The only argument relator makes is that the medical evidence proves otherwise.
 {¶ 30} In addition to finding that the matter had previously been adjudicated, the commission identified other reasoning for the conclusion that the retirement was voluntary. First, the commission noted that relator did not present any medical evidence which was contemporaneous to the date of relator's retirement indicating that his condition had worsened or become work-prohibitive. A review of the stipulated evidence demonstrates that this conclusion is accurate. Second, the SHO indicated that relator had returned to work at his former position of employment without restrictions for the two months preceding his retirement. Again, that is not contradicted by the record. Further, the SHO relied upon relator's testimony that he had not worked in any capacity, nor had he looked for any employment since his retirement. Further, relator had testified that, following his retirement, he had not been interested in any vocational rehabilitation or retraining for a less strenuous position. Considering all those facts together, the SHO found the evidence was indicative of relator's intent to abandon the workforce and concluded that he had voluntarily retired and was precluded from receiving PTD compensation. The commission cited the evidence upon which it relied and provided a *Page 12 
brief explanation. As such, the magistrate finds that the commission did not abuse its discretion in finding that relator had voluntarily retired from the workforce and was precluded from receiving PTD compensation.
 {¶ 31} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying him PTD compensation and this court should deny relator's request for a writ of mandamus.
[1] The copy of Ms. Corrigan's report submitted at the SHO hearing was not signed; however, counsel faxed a signed copy to the hearing officer following the hearing. *Page 1